UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

    ELIZABETH A. SISK,

              Debtor.
_____/

Case No.: 09-62281-ws
Chapter 7
Hon. Walter Shapero

KENNETH A. NATHAN, CHAPTER 7
TRUSTEE FOR THE ESTATE OF
ELIZABETH A. SISK,

              Plaintiff,

v.

DANIEL MCCAUSLAND,

              Defendant.
_____/

Adversary Case No.: 10-06414

## OPINION DENYING RELIEF SOUGHT IN THE AMENDED COMPLAINT

This is a fraudulent conveyance case action brought by the Trustee under U.S.C. § 548(a)(1)(b) and 11 U.S.C. § 544 (and applicable Michigan fraudulent conveyance law) involving the pre-petition sale by this Chapter 7 Debtor of a vehicle. The Defendant is the purchaser of that vehicle. For the reasons set forth, the Court denies the relief sought by the Trustee.

Prior to the filing of this bankruptcy case, the Debtor and her husband were chiropractors, each operating separate practices out of two separate offices. They also owned what was eventually described in the Debtor's bankruptcy schedules as a "2001 Kenworth Motor Home & Race Car Transporter" ("RV"). Prior to the filing, the Debtor and her husband were involved in contentious state court divorce proceedings resulting in orders requiring among other things, the Debtor's husband to pay her specified sums of money. He failed to make those payments and the state court

1

appointed a Receiver to enforce those and other payment orders. The Receiver took possession of the RV from the husband and delivered it in early December 2007 to Dennis Klein ("Klein"), an RV broker, for the purpose of having him sell it and apply the proceeds to the debts owed to and by the Debtor. The Receiver discussed the matter with Klein who indicated his estimate of the RV's value to be $53,000.00. Klein took possession of the RV and his driver drove it some 60 or so miles to his place of business where he put it up for sale. Klein retained possession of it until early May, 2008. About then, the State Court issued an order requiring the Receiver to surrender possession to the Debtor of (a) the RV and (b) the divorced husband's practice, to apply on the indebtedness owed to the Debtor, and by the Debtor for the Receiver's fees.

The Debtor filed her Chapter 7 bankruptcy case on July 17, 2009, noting in her Statement of Financial Affairs that she had transferred the RV to someone "unknown" on June 7, 2008, for the sum of $13,500.00. (She later amended it to acknowledge having received $15,000.00, and later indicated during discovery that the Defendant in this Adversary Proceeding was in fact the purchaser.)

The Trustee commenced this fraudulent conveyance action under 11 U.S.C. § 548 alleging primarily that the Debtor was insolvent at the time of the transfer and that the value of the RV was much higher than the $15,000.00.

The Receiver testified as to the indicated facts up to the point where the RV was turned over to Klein, and then later turned over to the Debtor. He never personally inspected the RV, did not obtain a formal appraisal, and essentially relied on discussions with Klein as to its value and condition.

2

Klein's business history encompassed employment with a large company and involvement in sales of hundreds of RV's for a number of years until he and another employee went out on their own. Since 2007, he has conducted a brokerage business in which he primarily takes in RVs for sale on a consignment basis. The subject RV is essentially a Kenworth truck tractor and chassis combined with and joined to what is a mobile home-like structure behind it which acts like, and is designed to be, a traveling garage for transporting racing, competitive or recreational vehicles. Klein stated that in his RV sales experience, he had only one like it before, and he was not able to sell that one. He stated he did receive a sight unseen offer for the subject RV of some $45,000.00 from a potential Canadian buyer, but it could not be followed up on because of Canadian import regulations apparently requiring verification of its actual manufacturer. Klein said he thought it was generally in good condition, except for the rear air suspension and some dents, etc., which he took into account when setting the $53,000.00 figure he mentioned to the Receiver. He also testified, however, that the actual market value then was likely twenty percent less than that number or around some $45,000.00, his usual practice being to price/list such things above their likely actual selling price. His asking price was also based on the description of the RV on a certificate of title as being a "2001 Special Motor Home."

The Defendant is a truck and auto technician and mechanic by trade, having acted as such as an employee of dealers for some 20 years after which he formed his own business with his brother performing services on various vehicles including heavy duty truck fleets. He also became involved in and became licensed for selling new and used vehicles. He holds various types of mechanic's licenses, approvals, and certificates. He has been involved in the up-fitting of many trucks and vehicles, various types of car haulers, etc. Taking into account his interest in this matter, the

3

Defendant's credentials as relate to the condition, provenance and other matters relating to the RV in question are comparably superior to those of Klein. In the Court's view, his experience and expertise apply not only to the issue of the condition of the vehicle at the time he purchased it, but also to the ultimate question of its value. It is less a question of the credibility of Klein, than it is the substantial difference between the knowledge, experience, and expertise of the two and the consequent weights of their testimony, particularly as they bear on the basic issue of value.

The Trustee seeks some $37,000.00 from the Defendant, that amount being approximately the difference between what the Plaintiff alleges the RV was worth at the time of the transfer, and the $15,000.00 the Defendant actually paid.

Among other elements, the Plaintiff bears the burden of proving in a fraudulent conveyance case that the transferor received less than reasonably equivalent value in exchange for the transfer. This case turns on that issue and the Court has concluded the Plaintiff has not borne that burden.

In addition to the foregoing recited facts surrounding and incident to the sale to the Defendant (some of which are repeated), the Court finds the following:

1. As noted when first engaged by the Receiver (who did not want to spend money for a formal appraisal of the RV), Klein, after discussions with the Receiver, suggested an asking price of some $53,000.00, which was just that, an asking price which even Klein allowed as how would have been some twenty percent or more in excess of what he thought he might be able to sell it for;

2. Klein was unsuccessful in finding a bona fide buyer at the asking price or indeed any price during the four months or so he had possession of the vehicle;

3. After the Receiver was required to turn the RV over to the Debtor, she, being busy with her practice and contemporaneously attempting to deal with the fallout and result of having her husband's practice also turned over to her, asked her then boyfriend to pick up the RV from Klein and to more or less take charge of attempting to dispose of it;

4

4. The boyfriend did so, taking it to a vacant lot near his home; he initially exhibited it for sale, but was required to move it off that lot, so he drove it to his own home on a traveled road where he parked it in his driveway, placing a "For Sale" sign on it with an asking price of $53,000.00, or some other price or best offer;

5. The Defendant had driven by and noticed the RV, called, and obtained permission to look at it; he performed a cursory inspection, took some notes of its condition, and then called the boyfriend; the Defendant asked about the sales price and was given a price of $53,000.00 or so, which the Defendant said was ridiculous. The Defendant made an offer of $15,000.00, and suggested the boyfriend take the vehicle to a Kenworth dealer to obtain figures as to the cost to have it repaired, and the Dealer's view as to the value;

6. A short time later the boyfriend, called the Defendant and advised him he had taken it to the Kenworth dealer who had apparently indicated the $15,000.00 offer was a viable one, and said he would sell the vehicle to the Defendant for $20,000.00; he also said the Debtor just wanted to sell the vehicle and was not in a position to spend any money to make any repairs, and was in the position of having to sell it or move it to another location because the boyfriend was getting pressure from his neighbor to remove it from their common or contiguous driveway;

7. The Defendant indicated he was really not interested in buying the vehicle for any price other than the $15,000.00 he had initially offered and reinspected the vehicle and stuck to that price; whereupon and after further discussion with the Defendant, the boyfriend called the Debtor and received permission to sell the RV to the Defendant for the $15,000.00; the sale and delivery to the Defendant was consummated soon thereafter;

8. There is some documentary evidence which, while not decisive, reinforces an otherwise appropriate conclusion, which indicates that there was a previous sales transaction involving this RV with respect to which a relative of the Debtor's former spouse may have acquired it a few years before for a consideration stated on title or related documents of $15,000.00.

The more credible evidence leaves little doubt that the condition and state of repair of the RV was poor and left much to be desired. Klein may have not fully appreciated it and the Defendant may understandably be a perfectionist. The totality of the evidence is sufficiently clear, however, that the subject RV was at best barely in a safely, if that, operable condition, and as such did not

5

justify the prices that the Receiver and Klein thought were appropriate or close to its real market value. It was likely capable of being fixed and its value increased, by way of investment by someone willing to invest the necessary time, money, and expertise. The Defendant saw it as something akin to one who might purchase a fixer-upper home that needed substantial labor and materials to make it habitable and saleable for more than the cost of doing so; if he did not wish to use it himself. The Court concludes the Debtor sold the RV for $15,000.00, because (1) she was not willing to invest her own money to bring it to a state of repair and condition as would permit its sale at a price that would have justified the expense involved; (2) her financial situation was such that she likely did not then have funds to do so, even if she wanted to; (3) her then priority was not only maintaining her own chiropractic practice, but also coping with the recently acquired practice of her divorced husband and Court orders incident thereto requiring payment of funds; (4) of the likely deterioration in value of the RV if she did nothing with it, and likely it may have required some funds to store or otherwise keep it even its then condition; (5) she had no use for the RV herself; and (6) it appeared the market (or lack of market) for it had been reasonably tested.

The necessary conclusion to be drawn from the evidence and the entire record is:

1. The sale to the Defendant was an arm's length, good faith sale, involving unrelated parties, under circumstances where the noted pressures on, and the motivations of, the selling Debtor were not such as would vitiate what was otherwise such an arm's length, good faith sale; and,

2. The Debtor received reasonably equivalent value.

That conclusion precludes the need to delve into the matter of the Debtor's insolvency or financial circumstances, or other needed to be proved elements of a fraudulent conveyance. Therefore, the Plaintiff has not borne his burden of proof in this fraudulent conveyance case; and judgment should be entered in favor of the Defendant. The Defendant shall prepare and present an appropriate order.

6

If for some reason it is later determined this Court does not have the authority to issue this as a final judgment, this Opinion should be considered as the required findings of fact and conclusion of law, under 28 U.S.C. § 157(c).

**Signed on April 17, 2012**

                                              **/s/ Walter Shapero**
                                     **Walter Shapero**
                                     **United States Bankruptcy Judge**